**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:24-cv-2808-RMR-CYC

BOARD OF TRUSTEES, SHEET METAL WORKERS' LOCAL 9 PENSION TRUST,
BOARD OF TRUSTEES, COLORADO SHEET METAL WORKERS' LOCAL 9 HEALTH
FUND,
JOINT APPRENTICESHIP AND TRAINING COMMITTEE, COLORADO SHEET
METAL WORKERS TRAINING FUND,
SHEET METAL WORKERS' LOCAL 9 VACATION FUND,
COLORADO SHEET METAL INDUSTRY FUND,
SMWIA LOCAL #9 AND SMACNA COLORADO LABOR/MANAGEMENT DRUG AND
ALCOHOL TESTING FUND,

      Plaintiffs,

v.

MOOSH, INC. d/b/a AIR SYSTEMS, INC.,

      Defendant.

---

## ORDER

---

    This matter is before the Court on Plaintiffs' Motion for Default Judgment Pursuant
to Fed. R. Civ. P. 55(b) (the "Motion"). ECF No. 18. For the reasons explained below, the
Court GRANTS the Motion.

## I.    BACKGROUND[1]

    This case involves Plaintiffs' alleged rights to monetary contributions under the
Employee Retirement Income Security Act ("ERISA"), the parties' Collective Bargaining

---

[1] The background facts in this Order are drawn from Plaintiffs' Amended Complaint (ECF No. 12). Because
of the Clerk of Court's entry of default, ECF No. 16, the allegations in the complaint are deemed
admitted. *See Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1125 (10th Cir. 2003).

Agreements ("CBAs"), and the Labor Management Relations Act ("LMRA"). Seven Plaintiffs brought claims against Defendant Moosh, Inc., doing business as Air Systems, Inc. ("Defendant"), alleging that by failing to make payments owed to Plaintiffs pursuant to the CBAs, ERISA, and LMRA, Defendant has violated 29 U.S.C. § 1145. ECF No. 12 ¶ 1. Plaintiffs also brought a breach of contract claim, seeking to enforce a Settlement Agreement that the parties entered into to resolve delinquent payments. *Id.*

Plaintiffs include (i) the Board of Trustees of the Sheet Metal Workers' Local 9 Pension Trust (the "Pension Fund"); (ii) the Board of Trustees of the Colorado Sheet Metal Workers' Local 9 Health Fund (the "Health Fund"); (iii) the Joint Apprenticeship and Training Committee of the Colorado Sheet Metal Workers Training Fund (the "Training Fund"); (iv) the Sheet Metal Workers' Local 9 Vacation Fund (the "Vacation Fund"); (v) the Colorado Sheet Metal Industry Fund (the "Industry Fund"); and (vi) the SMWIA Local #9 and SMACNA Colorado Labor/Management Drug and Alcohol Testing Fund (the "Drug Testing Fund"). *Id.* at 1. The Pension Fund, Health Fund, and Training Fund are referred to collectively as the "ERISA Funds." *Id.* The ERISA Funds, Vacation Fund, Industry Fund, and Drug Testing Fund are referred to collectively as "Plaintiffs" or the "Funds." *Id.*

Defendant is a party to one or more CBAs with the International Association of Sheet Metal, Air, Rail, and Transportation Workers' Local 9 ("Local 9"), and at all relevant times, Defendant employed sheet metal workers who performed CBA-covered work. *Id.* ¶¶ 13-14. The Plaintiff Funds were established pursuant to the CBAs and incorporated declarations of trust ("Trust Agreements"). *Id.* ¶ 18.

The CBAs require Defendant to make contributions to the Funds, which provide "retirement, medical, accident, disability, or apprenticeship and related benefits to eligible participants and their beneficiaries." *Id.* ¶ 7. The CBAs also require Defendant to timely submit monthly reports and pay contributions to the Funds by no later than the twentieth day of each month (the "Due Date") following the month in which covered work is performed. *Id.* ¶ ¶17, 25. Payments not received by the fifth day of the month following the Due Date are deemed delinquent and are subject to "penalties and costs as may be provided for by the Trust Agreements, resolutions, and policies of the respective [Plaintiffs], including, but not limited to, interest, liquidated damages, and all costs of collection[,] including reasonable attorneys' fees and accounting fees." *Id.* ¶ 20, 25.

In January 2024, the parties entered into a Settlement Agreement to resolve delinquent payments from May, June, and August through December of 2023. ECF No. 18-2 at 259-68. Defendant agreed to repay the Funds, totaling $237,153.24, in twelve monthly installment payments of $19,762.77 on the twentieth of each month from February 2024 to January 2025. *Id.* at 259-60. Defendant only made the agreed-upon payment in February and March 2024. ECF No. ¶ 45. The remaining amount owed pursuant to the Settlement Agreement is hereinafter referred to as the "Settlement Delinquencies." Additionally, Defendant failed to make full contributions to the Funds for the hours of CBA-covered work its employees performed in October 2023, January 2024, April 2024, through July 8, 2024. ECF No. 12 ¶¶ 33, 36. Hereinafter referred to as the "Current Delinquencies." Per the CBAs, the Plaintiffs terminated Defendant's participation

in the Funds effective July 8, 2024, because of Defendant's ongoing deficiencies. *Id.* at 35.

The CBAs and Trust Agreements allow Plaintiffs to hire a certified public accountant to conduct a payroll audit of Defendant to determine whether the correct amount of contributions to the Funds was made. ECF No. 12 ¶¶ 19, 21, 22, 27. Plaintiffs hired certified public accountants to conduct a payroll audit for the period from January 1, 2020, through March 31, 2023. ECF No. 18-2 at 267. On August 9, 2024, the audit revealed that Defendant owed an additional $257,661.86 in principal delinquent contributions to the Funds. *Id.* at 268; ECF No. 12 ¶ 47. Hereinafter referred to as the "Audit Delinquencies."

Plaintiffs' Complaint was filed on October 10, 2024, and Plaintiffs served Defendant through its registered agent in Englewood, Colorado, on November 19, 2024. ECF No. 6. Defendant failed to timely answer or respond. Plaintiffs then filed a Motion for Entry on Default on December 2, 2024. ECF No. 8. The Court directed the Clerk of Court to deny the Motion for Entry on Default because a portion of the Plaintiffs' claims was not ripe. ECF No. 10 The Court ordered Plaintiffs to file an amended complaint. *Id.* Plaintiffs filed an Amended Complaint on December 3, 2024. ECF No. 12. Plaintiffs filed a renewed Motion for Entry of Default on December 26, 2024. ECF No. 13. The Clerk of Court entered default on January 2, 2025. ECF No. 16. Plaintiffs filed their Motion for Default Judgment pursuant to Fed. R. Civ. P. 55(b) on February 13, 2025. ECF No. 18.

## II.    LEGAL STANDARD

The Court may enter default judgment against a party that has failed to plead or otherwise defend an action brought against it. Fed. R. Civ. P. 55(b)(2). The decision to enter default judgment is "committed to the district court's sound discretion." *Olcott v. Del. Flood Co.*, 327 F.3d 1115, 1124 (10th Cir. 2003) (internal citations omitted). "Strong policies favor resolution of disputes on their merits[,]" and default judgment should be "available only when the adversary process has been halted because of an essentially unresponsive party." *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991) (internal citations omitted).

When facing a motion for default judgment, the court must first evaluate and establish its jurisdiction. *See, e.g.*, *Bixler v. Foster*, 596 F.3d 751, 761 (2010). To enter a default judgment, a court must have both personal jurisdiction over each defaulting defendant and subject-matter jurisdiction over the action. *Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1203 (10th Cir. 1986). The second step of the inquiry is to evaluate whether the plaintiff's pleadings support a judgment on the claims alleged. *Tripodi v. Welch*, 810 F.3d 761, 765 (10th Cir. 2016). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008) (quotation and citation omitted). When deciding on a motion for default judgment, courts accept all well-pleaded factual allegations in the complaint as true. *Olcott*, 372 F.3d at 1125. Undisputed facts alleged in the affidavits or exhibits are also deemed true. *Id.* at 1124.

Allegations regarding the amount of damages, however, are deemed true only to the extent they are "capable of mathematical calculation." *Marcus Food Co. v. Dipanfilo*, 671 F.3d 1159, 1172 (10th Cir. 2011); *see Hunt v. Inter-Globe Energy, Inc.*, 770 F.2d 145, 148 (10th Cir. 1985) ("[A] court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation."). Where the amount claimed is not "a liquidated sum or one capable of mathematical calculation," a court is required to hold an evidentiary hearing to determine the amount of damages. *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983); *see Marcus Food*, 671 F3d. at 1171–72 (determining that the damages asserted in the complaint were sufficiently calculable to not require an evidentiary hearing).

## III.    ANALYSIS

Having considered Plaintiffs' Motion for Default Judgment and attached Exhibits, ECF Nos. 18, 18-1 to 18-3, and the Amended Complaint, ECF No. 12, the Court grants Plaintiffs' Motion for Default Judgment.

### A.    Jurisdiction

Before reaching the merits of the Plaintiffs' claims, the Court must determine whether it has subject matter jurisdiction to decide the claims and personal jurisdiction over the defendant. *Williams*, 802 F.2d at 1203.

#### 1.    Subject Matter Jurisdiction

Plaintiffs assert that the Court has subject matter jurisdiction over the action. ECF No. 12 ¶¶ 2-3. The Court agrees. The Court has subject matter jurisdiction over an action when there is either a federal question at issue or diversity between the parties. *See* 28

U.S.C. §§ 1331–1332. 28 U.S.C. § 1331 provides, in pertinent part, that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Here, Plaintiffs bring claims under ERISA—a federal statute providing, in relevant part, that "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter. . . ." 29 U.S.C. § 1132(e)(1). Additionally, Plaintiffs bring claims under the LMRA—another federal statute providing, in relevant part, that "[s]uits for violation of contracts between an employer and a labor organization . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 U.S.C. § 185(a). Accordingly, Plaintiffs' claims arise out of a federal cause of action and, thus, subject matter jurisdiction exists under 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1), and 29 U.S.C. § 185(a). *See Reg'l Dist. Council v. Mile High Rodbusters, Inc.*, 82 F.Supp.3d 1235, 1241 (D. Colo. 2015). Further, while Plaintiffs' breach of contract claim against Defendant does not arise under federal law, it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). Accordingly, the Court has supplemental jurisdiction over Plaintiffs' breach of contract claim against Defendant, and the Court finds no cause to decline to exercise this jurisdiction. *Id.* at §§ 1367(a), (c).

### 2.    Personal Jurisdiction

To determine whether there is personal jurisdiction, this Court must first address the adequacy of service. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant,

the procedural requirement of service of summons must be satisfied."); *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992) ("[S]ervice of process provides the mechanism by which a court having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served."); *Venable v. Haislip*, 721 F.2d 297, 300 (10th Cir. 1983) (finding "default judgment subject to attack as void for failure to serve defendant").

Defendant is a Colorado corporation with its principal place of business in Colorado. ECF No. 12 ¶ 11. Accordingly, service is governed by Federal Rules of Civil Procedure 4(h). Rule 4(h)(1)(B) permits service of a corporation in a judicial district of the United States "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Here, service was made, and the action was brought in Colorado. On December 2, 2024, Plaintiffs filed an Affidavit for Service, which stated that process server Derek Minto served process on Defendant by leaving the Summons in a Civil Action and Complaint with Minute Order at Defendant's address with Jakob Deverell. ECF No. 6. Mr. Deverell is Defendant's "Managing Agent" and, as such, is authorized to receive service of process for Defendant. Accordingly, this Court finds that Defendant was properly served.

Finally, the Court considers whether it has personal jurisdiction over Defendant. "[T]he plaintiff need only make a prima facie showing [of personal jurisdiction] if the motion [for default judgment] is decided only on the basis of the parties' affidavits and other written materials." *Dennis Garberg & Assocs., Inc., v. Pack-Tech Int'l Corp.*, 115 F.3d

767, 773 (10th Cir. 1997). Plaintiffs allege that Defendant is a Colorado corporation with its principal place of business in Colorado. ECF No. 12 ¶ 11. The Court finds that it has personal jurisdiction over Defendant. *See SEC v. Dalmy*, No. 19-cv-00745-RM-NYW, 2020 WL 108664, at *2 (D. Colo. Jan. 9, 2020) ("[T]he Court has personal jurisdiction over parties who are Colorado residents or were Colorado residents at the time when they committed the alleged acts which were the subjects of complaint."); *Mile High Rodbusters*, 82 F. Supp. 3d at 1242 (finding personal jurisdiction over a corporate defendant incorporated in Colorado and with an address in Colorado); *see generally Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (explaining that the touchstone of personal jurisdiction is establishing "minimum contacts" with the forum state).

### B.    Default Judgment

Once the Court has established jurisdiction over the matter and the defendant, it must next decide "whether the unchallenged facts constitute a legitimate cause of action," such that judgment should be entered. *Bixler*, 596 F.3d at 762 (quotation omitted). If judgment by default is entered, the Court must also ascertain the amount of damages to which the plaintiff is entitled. *See Mile High Rodbusters*, 82 F.Supp.3d at 1243.

### 1.    Liability

As previously mentioned, due to the entry of default, the well-pleaded facts of the complaint are deemed admitted. *Olcott*, 327 F.3d at 1125. The undisputed facts set forth by Plaintiffs in the declaration of Traci Mouritsen, Claim Administrative Team Lead for Rehn & Associates ("Rehn"), ECF No. 18-2 at 2, are also accepted as true. *Id.* at 1124.

Rehn is responsible for collecting and remitting employer contributions to the Funds. ECF No. 18-2 at 2. Accepting these allegations as true, the Court finds that Plaintiffs are entitled to judgment by default because Defendant failed to pay contributions owed to the Funds as required by the CBAs and ERISA. *See* 29 U.S.C. § 1145 ("Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or agreement."). Similarly, Section 301 of the LMRA provides a federal forum "for violation[s] of contracts between an employer and a labor organization representing employees." 29 U.S.C. § 185(a). Section 301 of the LMRA covers cases "relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement." *Cisneros v. ABC Rail Corp.*, 217 F.3d 1299, 1302 (10th Cir. 2000) (quotation omitted); *see also McNealy v. Caterpillar*, Inc., 139 F.3d 1113, 1121 (7th Cir. 1998) ("Section 301 is not just limited to formal CBAs. Instead, it encompasses any 'agreement between employers and labor organizations significant to the maintenance of labor peace between them.'" (quoting *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods*, 369 U.S. 17, 28 (1962)). Accordingly, Plaintiff must adequately allege a violation of an actionable contractual obligation by Defendant.

Ms. Mouritsen's declaration confirms the facts in the Amended Complaint. *See* ECF No. 18-2; *Olcott*, 327 F.3d at 1124. Defendant's employees performed work covered by the CBAs. ECF No. 18-2 ¶¶ 5-11. Defendant, as a party to the CBAs, was obligated to contribute timely to the Funds. *Id*. ¶ 12. Defendant failed to pay in full contributions owed

to the Funds for October 2023, January 2024, April 2024, May 2024, June 2024, and July 2024. *Id.* ¶ 28. Defendant has also violated the terms of the Settlement Agreement and has outstanding contributions due to the Funds under the Settlement Agreement. *Id.* ¶¶ 33, 44. Finally, an audit conducted before the filing of this suit determined that Defendant failed to make contractually required contributions of $257,661.86 during the period from January 1, 2020, to March 31, 2020. *Id.* ¶ 47. "Federal courts have recognized the right of ERISA employee benefit plans to compel such audits." *Trs. of Pipe IndustryHealth & Welfare Fund of Colorado v. Expert Mech. Servs., Inc.*, No. 13-CV-00911-REB-KLM, 2014 WL 3360300, at *3 (D. Colo. July 9, 2014) (citing *McDonald v. Beko Associates, Inc.,* 2009 WL 1456754 at *4 (D. Utah May 21, 2009)).

Defendant's failure to remit the required contributions, accrued interest, and liquidated damages is a breach of its obligations under the CBAs and the Trust Agreements,[2] and is a violation of Section 515 of ERISA and Section 301 of the LMRA. *Bd. of Trs., Colorado Sheet Metal Workers' Loc. 9 Fam. Health Plan v. J&C Stainless Fabricating Co.*, 2009 WL 306731, at *2 (D. Colo. Feb. 6, 2009); *see also id.* at *3-4 (granting default judgment under 29 U.S.C. § 1145 and 29 U.S.C. § 185(a) for a breach of the defendant's contribution obligations under a settlement agreement); *Mile High Rodbusters, Inc.*, 82 F. Supp. 3d at 1243 ("Defendant has failed to pay all contributions, plus accrued interest and liquidated damages, owed to Plaintiffs. Defendant's failure to remit the required contributions and accrued interest is a breach of its obligations under

---

[2] The CBAs and Trust Agreements are attached as Exhibits A-F to Ms. Mouritsen's declaration. ECF No. 18-2.

the Agreement and is a violation of Section 515 of ERISA, 29 U.S.C. § 1145. Under Sections 515 and 502(g) of ERISA, 29 U.S.C. §§ 1145 and 1132(g)(2), Defendant is obligated to pay the full amount of its delinquent contributions under the terms of the Agreement, plus interest." (internal citations omitted)).

Because the Court deems the well-pleaded facts of the complaint and Ms. Mouritsen's declaration as true, the Court finds that Plaintiffs have established that Defendant failed to pay the required contributions as required by the CBAs and ERISA and that default judgment should be entered against Defendant accordingly.

The well-pleaded allegations in the Amended Complaint and the facts set forth in declarations and exhibits attached by Plaintiffs further support the entry of default judgment on Plaintiffs' breach of contract claim against Defendant. Under Colorado Law,[3] a breach of contract claim requires: (1) existence of a contract; (2) performance by the plaintiff; (3) failure to perform by the defendant; and (4) damages. *Shell v. Am. Fam. Rights Ass'n*, 899 F. Supp. 2d 1035, 1058 (D. Colo. 2012) (citing *W. Distrib. Co. v. Diodosio*, 841 P.2d 1053, 1058 (Colo. 1992)). Defendant entered into the Settlement Agreement. Under the terms of the agreement, Defendant agreed to pay a total of $237,153.24 to the Funds, representing prior delinquencies owed to the Funds, plus interest and late fees, in twelve monthly installments of $19,762.77 starting in February 2024 and ending in January 2025. Defendant made two of the required monthly payments in February 2024 and March 2025. Defendant did not make the remaining required

---

[3] The Settlement Agreement, attached as Exhibit G to Ms. Mouritsen's Declaration, provides that it "shall be governed by the laws of Colorado, except as required by ERISA or other applicable federal law." ECF No. 18-2 at 262.

payments. The Court finds no nonperformance by Plaintiffs, and finds that the Plaintiffs have suffered damages resulting from the continued non-payment of Defendant's obligations under the Settlement Agreement. Accordingly, the Court finds Plaintiffs have presented sufficient allegations through the Amended Complaint and exhibits attached to the Motion to support the breach of contract claim against Defendant.

### 2. Relief

On the issue of damages owed to Plaintiffs, ERISA provides that:

In any action under this title by a fiduciary for or on behalf of a plan to enforce section 1145 in which a judgment in favor of the plan is awarded, the court shall award the plan--

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

(i) interest on the unpaid contributions, or

(ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under sub-paragraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2). Plaintiffs seek relief under subsections (A) through (D)—namely, unpaid contributions, interest, liquidated damages, and attorney's fees, which are

mandatory. *See id.* ("the court shall award the plan"); *Mile High Rodbusters*, 82 F.Supp.3d at 1243-44. The Fund's Policy for Collection of Delinquent Contributions ("Collection Policy") provides that Plaintiffs may assess interest on unpaid contributions from the Due Date at the rate of 10% per annum. ECF No. 12 ¶ 26; ECF No. 18-2 at 237-238.

### a.    Current Delinquencies

With respect to Current Delinquencies, *see* 29 U.S.C. § 1132(g)(2)(A), Plaintiffs request contributions from October 2023 through June 2024 totaling $171,820.63. ECF No. 18-1 ¶ 25. Plaintiffs also request an estimated delinquent contribution of $12,197.42 for July 2024 through the termination date of July 8, 2024. *Id.* ¶¶ 28-29. Because Defendant failed to provide remittance reports to the Funds for July 2024, the Plaintiffs estimated the amount of the July 2024 delinquent contributions based on the number of hours of covered work performed in June 2024. *Id.*; see also *Flynn v. Extreme Granite, Inc.*, 671 F. Supp. 2d 157, 162 (D.D.C. 2009) (granting ERISA plaintiff's request for the estimated amount of delinquent contributions owed, given that the defendant failed to provide information necessary to make a more precise determination). The Court thus finds that Plaintiffs have provided sufficient evidence regarding these unpaid contributions of $184,015.05 ($171,820.63 + $12,197.42 = $184,015.05).

With respect to interest on the Current Delinquencies, see 29 U.S.C. § 1132(g)(2)(B), Plaintiffs provide evidence through Ms. Mouritsen's declaration that Defendant owes interest on its unpaid contributions in the amounts listed below. ECF No. 18-2 at 12-13. Because interest continued to accrue even after Defendant ceased to employ any workers who performed CBA-covered work, Ms. Mouritsen's interest

calculation is current up to January 31, 2025. *Id*. With respect to additional interest or liquidated damages, *see* 29 U.S.C. § 1132(g)(2)(C)(ii), the Collection Policy provides that Plaintiffs may assess liquidated damages at the rate of twenty percent of the delinquent contributions, ECF No. 18-2 at 244. Plaintiffs provide evidence through Ms. Mouritsen's declaration that Defendant owes liquidated damages in amounts listed below. ECF No. 18-2 at 12-13. In total, Plaintiffs assert that Defendant owes $231,354.60 for unpaid contributions for October 2023 through July 2024, interest, and liquidated damages as outlined in the CBAs. Plaintiffs have provided the Court with undisputed proof of the amounts owed as follows:

a. $123,339.08 owed to the Health Fund, including $97,652.74 in principal contributions, $19,530.55 in liquidated damages, and $6,155.79 in interest; and

b. $67,225.76 owed to the Pension Fund, including $53,225.85 in principal contributions, $10,645.17 in liquidated damages, and $3,354.74 in interest; and

c. $24,109.19 owed to the Training Fund, including $19,088.40 in principal contributions, $3,817.68 in liquidated damages, and $1,203.11 in interest; and

d. $11,014.91 owed to the Vacation Fund, including $8,721.35 in principal contributions, $1,744.27 in liquidated damages, and $549.29 in interest; and

e. $5,362.09 owed to the Industry Fund, including $5,044.14 in principal contributions and $317.95 in interest; and

f. $303.57 owed to the Drug Testing Fund, including $285.57 in principal

contributions and $18.00 in interest.

*Id.* at 12-13. This is consistent with what is demanded in the pleadings and is adequately

supported by Ms. Mouritsen's declaration. Therefore, the Court will enter judgment

against Defendant for $231,354.60 in Current Delinquencies.

### b.     Settlement Delinquencies

Plaintiffs next seek relief against Defendant for violation of the Settlement

Agreement, request the overdue amount, and liquidated damages. ECF No. 18-1 ¶ 31.

The Settlement Agreement provided for 20% liquidated damages in the event of default,

and the Funds initiate an action to collect any amounts due. ECF No. 18-2 at 261. Ms.

Mouritsen calculated Defendant's total obligation under the Settlement Agreement to be

$237,153.24—reflecting overdue payments ($197,627.70) and liquidated damages

($39,525.54). *Id.* at 13. This relief, sought in the pleadings, is supported by the

calculations in Ms. Mouritsen's declaration. The Court therefore finds that Plaintiffs have

adequately alleged and established their entitlement to relief for Defendant's violation of

the Settlement Agreement, in the amount of $237,153.24.

### c.     Audit Delinquencies

With respect to Audit Delinquencies, *see* 29 U.S.C. § 1132(g)(2)(A), Plaintiffs

request relief for unpaid contributions from January 1, 2020, through March 31, 2023,

totaling $257,661.86, that were discovered during an audit of Defendant conducted in

2024. ECF No 18-1 ¶ 46. With respect to interest on the Audit Delinquencies, see 29

U.S.C. § 1132(g)(2)(B), Plaintiffs provide evidence through Ms. Mouritsen's declaration

that Defendant owes interest on its unpaid contributions in the amounts listed below. ECF No. 18-2 at 13-14. Because interest continued to accrue even after Defendant ceased to employ any workers who performed CBA-covered work, Ms. Mouritsen's interest calculation is current up to January 31, 2025. *Id.* With respect to additional interest or liquidated damages, Plaintiffs seek a second assessment of interest instead of liquidated damages pursuant to 29 U.S.C. § 1132(g)(2)(C)(i). Plaintiffs provide evidence through Ms. Mouritsen's declaration that Defendant owes liquidated damages in amounts listed below. ECF No. 18-2 at 13-14. In total, Plaintiffs assert that Defendant owes $428,091.99[4] for unpaid contributions for January 1, 2020, through March 31, 2023, interest, and liquidated damages as outlined in the CBAs. Plaintiffs have provided the Court with undisputed proof of the amounts owed as follows:

a. $423,508.62 owed to the Health Fund, including $256,032.48 in principal contributions, $83,738.07 in interest, $83,738.07 in a second assessment of interest in lieu of liquidated damages; and

b. $1,861.63 owed to the Pension Fund, including $1,002.79 in principal contributions, $429.42 in interest, and $429.42 in double interest in lieu of liquidated damages; and

c. $578.78 owed to the Training Fund, including $311.76 in principal contributions, $133.51 in interest, and $133.51 in double interest in lieu of liquidated damages; and

d. $333.88 owed to the Vacation Fund, including $181.14 in principal

---

[4] Plaintiffs amount includes $1,617.76 in Audit Costs discussed in Section III.B.2.d.

contributions, $76.37 in interest, and $76.37 in double interest in lieu of

liquidated damages; and

e. $179.36 owed to the Industry Fund, including $125.33 in principal

contributions and $54.03 in interest; and

f. $11.96 owed to the Drug Testing Fund, including $8.36 in principal

contributions and $3.60 in interest.

ECF No. 18-2 267-68. This is consistent with what is demanded in the pleadings and is

adequately supported by Ms. Mouritsen's declaration. Therefore, the Court will enter

judgment against Defendant for $428,091.99 in Audit Delinquencies.

### d.    Audit Costs

Additionally, pursuant to the Health Fund, Defendant is also liable for the costs of

the audit Plaintiffs undertook to determine the extent of Defendant's delinquency because

the audit disclosed "unreported contributions in excess of ten percent (10%) of those

contributions previously reported during the period of time being audited." ECF No. 18-2

at 13, 197. According to Ms. Mouritsen, the Plaintiffs incurred $1,617.76 in audit costs.

*Id.* at 13. Entering judgment against Defendant in the amount of $1,617.76 for audit costs

is warranted.

### e.    Attorney's Fees and Costs

ERISA requires Defendant to pay Plaintiffs' reasonable attorney's fees and costs

in this action. *See* 29 U.S.C. § 1132(g)(2)(D); *Mile High Rodbusters*, 82 F.Supp.3d at

1244.

To determine a reasonable fee award, the Court conducts a lodestar calculation as outlined in *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983). A lodestar calculation requires multiplying the number of attorney hours expended to resolve an issue or perform a task by a reasonable hourly billing rate. *Mile High Rodbusters*, 82 F.Supp.3d at 1245 (citing *Hensley,* 461 U.S. at 433). To determine the number of hours expended, the Court reviews counsel's billing entries to ensure that counsel exercised proper billing judgment. *Id.* (citing *Case v. Unified Sch. Dist. No. 233, Johnson Cnty., Kan.,* 157 F.3d 1243, 1250 (10th Cir. 1998)). Once the Court determines the lodestar, it may "adjust the lodestar upward or downward to account for the particularities" of the work performed. *Id.* (citing *Phelps v. Hamilton,* 120 F.3d 1126, 1131 (10th Cir. 1997)).

"Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Mile High Rodbusters*, 82 F.Supp.3d at 1245–46 (quoting *Case,* 157 F.3d at 1250). In determining what is a reasonable time in which to perform a given task, an attorney submitting billing entries should consider the following factors: (1) the complexity of the case; (2) the number of reasonable strategies pursued; (3) the responses necessitated by the maneuvering of the other side; and (4) the potential duplication of services caused by the presence of multiple attorneys when one would suffice. *Id.* at 1246 (citations and quotation marks omitted). Counsel must make a good faith effort to exclude hours or costs that are "excessive, redundant or otherwise unnecessary." *Hensley*, 461 U.S. at 434. And ultimately, counsel seeking an award of attorney's fees must demonstrate that it exercised proper billing judgment and that the

amount it seeks is reasonable. *See Mile High Rodbusters*, 82 F.Supp.3d at 1246 (citation omitted).

Notwithstanding the foregoing standards, while the starting point for any calculation of a reasonable attorney's fee generally is the "lodestar," the Court is not required to reach a lodestar determination in every instance, and it may simply accept or reduce a fee request within its discretion. *Hensley*, 461 U.S. at 436–37. The Court exercises its "discretion in making this equitable judgment" and does not "apportion the fee award mechanically" by considering each claimed expense and determining its reasonableness overall. *Id.* at 437–40 (holding that the court "should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained").

Here, counsel for Plaintiffs states that the attorneys' fees and costs total $11,821.19. ECF No. 18-1 at 18. The Court has reviewed the Declaration of Richard S. Siegel, Esq. in Support of Plaintiffs' Motion for Default Judgment, which indicates an hourly rate between $325–360 for counsels' labor and $210 for paralegals' labor, as well as the attachments to the declaration, which detail the nature and duration of the work performed in this matter. ECF No. 18-3. Based on these documents, the Court finds counsel's hourly rate to be reasonable in this market and that the time spent on this matter was reasonably necessary to obtain the result. *See Hensley*, 461 U.S. at 437–40. The Court also finds that counsel's costs in this matter were reasonable. In total, the Court will enter judgment against Defendant for $11,821.19 in attorney's fees and costs.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS that Plaintiffs' Motion for Default Judgment Pursuant to Fed. R. Civ. P. 55(b)(1), ECF No. 18, is GRANTED. In total, combining the amounts owed for the Current Delinquencies ($221,354.60), Settlement Delinquencies ($237,153.24), Audit Delinquencies ($428,091.99), and reasonable attorney fees and costs ($11,821.19), Plaintiffs have established entitlement to relief against Defendant for $908,421.02.

The Clerk of Court is DIRECTED to enter final judgment in favor of Plaintiffs and against Defendant in the amount of $908,421.02.

It is ORDERED that Plaintiffs may file a motion for additional interest on the amounts owed from January 31, 2025, to the date of this Order within 30 days of this order.

It is FURTHER ORDERED that post-judgment interest shall accrue as provided by 28 U.S.C. § 1961 from the date of entry of judgment.

DATED: September 8, 2025

BY THE COURT:

_____

REGINA M. RODRIGUEZ
United States District Judge